SORIANO ET AL., PLAINTIFFS AND APPELLANTS, *v.* REXACH ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan, Section 1, in an Action of Ejectment and for Damages.

No. 1221.—Decided March 9, 1916.

NATURAL CHILDREN—INTESTATE SUCCESSION OF GRANDFATHER.—The natural children of a legitimate son have no rights in the intestate succession of the grandfather, and, therefore, no capacity to institute intestate proceedings.

ID. — CONSTRUCTION OF LAW — NATURAL CHILDREN — INHERITING FROM GRANDFATHER—DESCENDANTS—LEGITIMATE CHILDREN.—According to the laws in force in 1875, prior to the adoption of the Spanish Civil Code—that is, the *Partida* Laws—natural children could not inherit, either in their own right or *per stirpes*, from their grandfather, the lawful father of their puta-

tive father. The descendants referred to in Law III, *Partida* VI, the prototype of sections 931 and 934 of the Spanish Civil Code, comprise only legitimate children.

ID.—PROOF OF STATUS OF HEIRS—DESIGNATION OF HEIRSHIP—EVIDENCE.—When the plaintiff bases his action upon his status of heir and that fact is not admitted by the defendant, the former may prove such a status at the trial without the necessity of having recourse therefor to *ex parte* proceedings to obtain a declaration of heirship; and unless some element of time or memory or other exceptional circumstance is involved, the testimony given at the trial upon the merits of the question has more intrinsic weight and real probative value, and, therefore, is even better evidence of the ultimate fact than the mere certified copy of an order entered in *ex parte* proceedings in which the adverse party had no participation; but such proof can only be valid and efficient with relation to the defendant in the particular case being considered.

ID.—EJECTMENT—TITLE OF HEIRSHIP—PARTITION AND ADJUDICATION OF ESTATE.— Heirship conveys a joint right to the aggregate heritage and by virtue thereof by the death of their predecessor all the heirs become owners in common and may all join in a suit in ejectment without the necessity of instituting proceedings for partition and distribution. But until such proceedings for partition and distribution are terminated, none of the heirs may be considered to be the sole and exclusive owner of any particular portion or fixed aliquot part of the property of the heritage, and, therefore, no single heir can successfully prosecute such an action.

The facts are stated in the opinion.

*Messrs. Herminio Díaz Navarro, Henry G. Molina* and *Luis Samalea Iglesias* for the appellants.

*Messrs. Bosch & Soto* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The reasons upon which the court below rested its judgment are stated in a written opinion as follows:

"The case submitted to this court for decision arises on a sworn complaint in an action of ejectment and for damages brought by Isaac Soriano, Rita, Visitación and Jovito Soriano y Clemente against José Rexach and the Succession of Pablo Ubarri Iramategui wherein they pray for recovery of the property and the sum of twenty thousand dollars damages by virtue of the following allegations:

"(*a*) That Juan Evangelista Soriano was the owner of a piece of land composed of 200 acres, situated in Seboruco of Santurce, and that said Juan Evangelista Soriano having died in 1875, the complainants became the owners of the said property.

"(*b*) That from the year 1875 up to 1885 Isaac had been in the actual and uninterrupted possession of said property from which

72 acres and 4,800 square yards were segregated and sold in said year 1885 to Pablo Ubarri Capetillo.

"(c) That Isaac Soriano remained in possession of the remaining 128 acres, as stated in the complaint, and in the year 1901 Pablo Ubarri Iramategui having purchased from Pablo Ubarri y Capetillo some properties which were bounded on the south and east by the aforesaid 128 acres, ejected Isaac Soriano from said lands, entering into the possession thereof without any legal title whatsoever, to the prejudice and against the will of complainants.

"(d) That in 1905 Pablo Ubarri Iramategui conveyed the aforesaid property to José Rexach Dueño, who is now in possession of the same without any legal title and against the will of complainants.

"(e) That Pablo Ubarri and José Rexach have caused damages to complainants in the sum of ten thousand dollars.

"The defendant Succession of Pablo Ubarri Iramategui, in its own right and as summoned for eviction by José Rexach y Dueño, answered said complaint under oath, praying for the dismissal of said complaint in all its parts, by reason of the following allegations:

"(f) That due to lack of information it denied the averments of the complaint where reference was made to Juan Evangelista Soriano as having been the owner of a property of 200 acres.

"(g) That it is not true that in 1885 a segregation was made of a piece of land of 72 acres and 4,890 square yards, inasmuch as the said property which formerly belonged to the Succession of Juan Evangelista Soriano had been attached and sold at public auction and bid in by Pablo Ubarri Capetillo.

"(h) That it is not true that Pablo Ubarri Iramategui had fraudulently converted to his own use the 128 acres or sold them to Rexach but that what occurred was that long before the year 1901 Pablo Ubarri Iramategui had acquired from Pablo Ubarri y Capetillo the lands involved in this suit, both the Ubarris having possessed the same quietly and peacefully, and that said lands did not belong to Isaac Soriano.

"(i) That it is not true that Pablo Ubarri Iramategui had ever sold to Rexach 128 acres in the Seboruco but that the sale was of properties of 200 acres and 72 acres and 4,890 square yards, which had been recorded by Pablo Ubarri y Capetillo in the registry of property, the 200 acres since the year 1884 and the 72 acres and 4,890 square yards from the year 1889.

"(*j*) That they denied the facts relative to the recovery of damages.

"(*k*) That in 1904 Isaac Soriano brought a suit against Pablo Ubarri Iramategui alleging the same cause of action as is now alleged in the present complaint, judgment having been rendered on January 6, 1905, the court holding 'that the law and the facts were in favor of the defendant, whereupon it rendered judgment in his favor, holding that plaintiff should not recover anything from the defendant, with the costs upon the plaintiff;' that the action in said suit was of equal nature to the present action, the subject-matter of the litigation being the same property which is now claimed and for the same cause as the one alleged in this suit, and that between the plaintiff in the former action and the claimants herein the most perfect solidarity exists, the former and the latter deriving their claim upon the property mentioned from their condition as heirs of Juan Evangelista Soriano, their grandfather.

"The complainants presented in evidence the certificate of birth of Isaac Soriano, from which it appears that he is a natural son of María Exaltación Soriano; the certificate of death of Juan Evangelista Soriano; a plan prepared in 1889 by engineer Fernando López Tuero; a certificate to the said plan signed by the said engineer, and the testimony of several witnesses. It appears from this plan and certificate that parcel 'A' is composed of 72 acres and 4,890 square yards and is situated in Seboruco, Santurce; that there was a piece of 128 acres in the same place, which, according to the certificate, belonged to the Government in said year 1889.

"Discarding the oral testimony which we shall consider hereafter in order to ascertain whether it suffices of itself to show the ownership acquired by prescription, it clearly appears that complainants have not shown their ownership of the parcel claimed, neither in favor of the supposed ancestor, Juan Evangelista Soriano, nor of their pretended heirs, the plaintiffs in this suit.

"Regardless of these defects in the evidence, which is by all means insufficient, Isaac Soriano has not shown his character as heir of Juan Evangelista Soriano, legitimate father of María Exaltación Soriano and natural grandfather of the said complainant. Rita, Visitación and Jovito Soriano testified that they are the legitimate children of José Benito Soriano, son of Juan Evangelista; but they presented no documentary evidence to show their character as heirs or even attempted to show that Juan Evangelista Soriano had died without executing a will. Even if complainants had duly shown their capacity

as heirs or proven the ownership of the land claimed in favor of Juan Evangelista Soriano, the evidence still would have been insufficient inasmuch as we are ignorant as to whether or not there was any liquidation made of the estate of the ancestor; whether the proper allotments were made after the debts had been satisfied, in the event that some hereditary property had been left, and whether the property in litigation formed a part of these properties, the allotment of said property having been to the complainants. We think that these requirements are necessary in order that the action of ejectment may be successfully prosecuted when the ownership of the property is based on a hereditary title. It is evident, therefore, that the allegation of the complaint wherein it is stated that Juan Evangelista Soriano was the owner of the property claimed up to the time of his death when the property passed to the complainants in this suit, has not been satisfactorily shown. The complainants might have alleged the ownership in general terms; but from the moment when they claim to have acquired the same by title of inheritence they are bound to show solely and exclusively the facts that have been alleged, inasmuch as the showing of the ownership by any other means of acquisition might have shown a variance between the allegations and the proof. *Eagan* v. *Delanoy,* 16 Cal. 85.

"The complainants also allege that Isaac Soriano had the actual and uninterrupted possession of the property in litigation from the year 1875 to 1901, when he was deprived thereof by Pablo Ubarri Iramategui; but in our opinion, this possession in the manner alleged does not amount to an allegation of ownership acquired by prescription. The acquisition by a person who was in possession of the thing for an equal or greater period than that required by law, necessarily implies the loss of said dominion by the real owner. That which is acquisitive for one person must be extinguishing for another, and it is clear and evident that if a person possesses a property which, according to his allegations, did not belong to any other owner but which was acquired by title of inheritance, in order to obtain a successful result in his claim he is bound to show his title in the manner alleged, for only adverse possession may serve as a basis to justify the dominion by lapse of time, so that once it is alleged and shown, there satisfactorily appears to the court on the one hand the right acquired and on the other the right extinguished. The allegation that the 128 acres of land claimed were acquired by title of inheritance places the complainants in an attitude from which they cannot deviate to show the adverse possession, because if they were

the sole owners of the property, how can thy allege prescription against themselves?

"This prescription at most would have to be an extraordinary prescription inasmuch as the complainants have not shown in any manner any title in their favor. Let us examine the oral testimony to see whether the complainants have shown or not the alleged possession for a period exceeding thirty years. The witnesses called by said complainants testify that they saw Isaac Soriano living on the property during a long period of time; some of them state that he possessed as owner, but none of said witnesses declare that this possession was public, peaceful and uninterrupted. We think that the evidence adduced with reference to the possession of the property is very feeble. In order to show the ownership acquired by prescription it is necessary to show the possession with all the requirements of law by strong and competent evidence which satisfies the judge. The action of ejectment must have a sound foundation in order that it may be successfully prosecuted; it must be founded on substantial and clear evidence, as plaintiff must base his action on the validity and efficacy of his own title and not on the weakness or frailty of that of the opposite party. The burden is on the plaintiff and if he bases the action on the acquisition of ownership by prescription, he is bound to show this prescription with all the requirements under the law, and it is well known that the code and jurisprudence require exclusive possession in the capacity of owner, in a public, peaceful and uninterrupted manner. The defendant is not bound to cure the defects which may appear in the evidence presented 'by the plaintiff. Any of the requirements mentioned is essential for the proper prosecution of the action and if there is failure to prove one of them the action cannot prosper.

"The Supreme Court of Spain has held by judgment of May 22, 1896, that exclusive possession in the capacity of owner is one of the essential requirements for prescription.

"Where adverse possession is specially pleaded, the party relying on it must allege that this possession was actual, open, notorious, visible, exclusive, continuous and uninterrupted, and for the statutory period; and that it was hostile or adverse or under claim of right or title by him. 1 Cyc. 1141, 1142.

"The burden of proving adverse possession is in all cases upon him who sets it up and relies on it. He must show every element necessary to constitute a title under the statute of limitations, and if he fail to do so it is the duty of the court to instruct the jury that

there is not sufficient evidence to entitle him to recover. It must be shown that the possession was actual, open and notorious, continuous, and for the full time required by the statute, exclusive and hostile. 1 Cyc. 1143, 1144.

"As is seen, the American jurisprudence is perfectly in harmony with the provisions of our Civil Code.

"These conclusions having been settled, we deem it unnecessary to stop to consider the evidence to find out whether or not the identity of the property claimed has been satisfactorily shown.

"For the foregoing reasons the complaint is hereby dismissed with costs upon the plaintiffs. The secretary will enter a judgment in due form."

Seven errors are assigned as follows:

"1. The court erred in finding that Isaac Soriano did not show his character as heir of Juan Evangelista Soriano.

"2. The court erred in finding that no showing was made as to the fact that Juan Evangelista Soriano was the owner of the property claimed up to the time of his death.

"3. The court erred in finding that it was not shown that in this case the possession was public, peaceful and uninterrupted because none of the witnesses actually made these statements.

"4. The court erred in finding that complainant did not show all the necessary elements to establish a dominion title acquired by prescription in this case.

"5. The court erred in considering that the following are indispensable requisites to the successful prosecution of the action of ejectment when the ownership of the property is based on a hereditary title and when the character of the ancestor's heir is shown; whether or not there was any liquidation of the estate; if the proper allotments were made; if the debts were satisfied or not; if the property in litigation forms a part of these properties, and whether the adjudication thereof was made to the complainants.

"6. The court erred in holding that the actual and uninterrupted possession by Isaac Soriano of the property in litigation from the year 1875 to 1901, when he was deprived thereof by Pablo Ubarri, does not constitute a delegation of ownership acquired by prescription.

"7. The court erred in dismissing the complaint."

As to the error first alleged, the evidence shows that Juan Evangelista Soriano died in 1875, some ten years after the

death of his daughter María Exaltación, the mother of Isaac, a natural son; and that he left a legitimate son, José Benito, father of María Rita, Visitación and Jovito Soriano, plaintiffs herein. Isaac, therefore, is not a forced heir of his grandfather. "The natural children of a legitimate son have no interest in the intestate succession of the grandfather and therefore no capacity to institute intestate proceedings." Decision of the Supreme Court of Spain of February 13, 1903. But Juan Evangelista having died in 1875, prior to the adoption of the Spanish Civil Code, we must look to the *Partidas* as the law then in force and it seems that the descendants referred to in Law II, Part. 6th, the prototype of sections 931 and 934 of the Spanish Civil Code, comprise only "legitimate children and that natural children cannot inherit either in their own right or *per stirpes* from their grandfather, the legitimate father of their natural father." 7 Manresa 86.

The question is not *res nova* in this court but was fully discussed and squarely decided in the case of *Correa et al.* v. *Correa et al.*, 18 P. R. R. 115, wherein, to quote the syllabus, it was held:

"According to the laws in force on August 13, 1879, an acknowledged natural child was not entitled to inherit as the representative of his putative father from his paternal grandfather and, therefore, the father of the plaintiffs in this action was not an heir-at-law of the ancestor of the defendant succession and plaintiffs have no cause of action entitling them to ask for the nullity of the will attacked in the complaint.

"Under the provisions of the Spanish Civil Code which was in force in Porto Rico in 1890, an acknowledged natural child had no right to inherit as representative of his putative father from his paternal grandfather."

In support of the second assignment appellants rely wholly upon their oral evidence and from the entire mass of the testimony they have gleaned and compiled in one paragraph, as a conclusive demonstration of title in their grandfather, the following fragments:

"Isaac Soriano testifies that he lived on the property of 128 acres belonging to his grandfather, Juan Evangelista Soriano (page 24 of transcript); Escolástico Soriano says that he was born and lived for a long time at Seboruco on the property belonging to his father, describing same (page 25 of transcript); Rita Soriano testifies that she was born at Seboruco on the property of her grandfather, describing same; that she was born on that property then belonging to her grandfather; that she was small when she left the property, over 30 years ago, Isaac Soriano remaining in possession of said property at the death of her grandfather (page 27 of transcript); Juan París Calderón states that he knows Isaac Soriano and the property where he lived which belonged to his grandfather (page 27 of transcript), and in describing same again says 'the owner being the father of Isaac Soriano,' and that Isaac Soriano lived on the property and prior to him his grandfather Juan Evangelista Soriano, whom he knew as owner of the property from the year 1850, and that Juan Evangelista .Soriano lived on said property until the time of his death and thereafter his grandson Isaac Soriano; José Tanco testifies that Juan Evangelista and Isaac Soriano lived on said property, describing same, as owners thereof and says so because he knew Juan Evangelista on that property since he was fourteen or fifteen years old; that after the death of Juan Evangelista, Isaac Soriano lived on the property (page 29 of transcript); Ignacio Galíndez testifies that Juan Evangelista Soriano was owner of said property and then his grandson remained there up to this time."

Not only do these vague and isolated statements lose much of what little persuasive force they have when considered as they appear in narrative form in the record in connection with the context and in the light of other statements of the individual witnesses and the general tenor and effect of all the testimony, but they were weighed in the court below as they came from the lips of the witnesses on the stand and they do not seem to have inspired any large measure of confidence in the mind of the trial judge. To discuss the same at length in connection with all the documentary evidence in the record, much of which is not mentioned at all by the district judge in his opinion, would be a waste of time and energy.

For the purposes of this opinion we may concede the contention urged by appellants in argument under the third assignment, to wit, that witnesses need not necessarily set forth in technical legal terminology the nature of the possession to which they testify, but here again we must likewise agree with the court *a quo* both in a general way as to the character of possession that must be shown when relied upon by plaintiff in a reivindicatory action as establishing title by prescription and as to the failure upon part of plaintiffs herein to make the necessary showing. Any satisfactory statement of our reasons for the conclusion reached upon this phase of the case would involve a full statement and analysis of all the evidence and would extend this opinion beyond all reasonable limit. It will suffice to say that we have carefully examined the whole record, that whatever doubt the testimony for plaintiffs might raise as to possible error in this regard is entirely removed by the documentary evidence and that we fully concur in the finding of the trial court.

The question raised under the fourth assignment is substantially disposed of by what we have already said. Anything beyond that would amount to a mere academic discussion of abstract principle.

The conclusions reached upon the questions already discussed likewise dispose of the whole case regardless of the merits of the proposition stated under the remaining specifications.

To avoid possible misunderstanding, however, we may say that the point made under the fifth assignment is well taken, and, if the decision of the court below had turned upon the question so raised, a reversal would have been necessary. The application made by the trial judge to the facts in this case of the theory enunciated in the opinion above set forth, moreover, would seem to justify a brief repetition here of what this court has heretofore announced upon more than one occasion as the true doctrine in a case like the one at bar.

In *Morales et al.* v. *Landrau et al.,* 15 P. R. R. 763, at 776–777, this court, through Mr. Chief Justice Hernández, said:

"If in accordance with the provisions of section 665 of the Civil Code, the rights to the succession of a person are transmitted from the moment of his death, and according to section 669 of the said code, the heirs succeed the deceased in all his rights and obligations by the mere fact of his death, it is logical to deduce that for the establishment of the right of succession alleged in the complaint with relation to Petrona and Dolores Morales Oquendo, the certificates of their deaths could be presented at the trial.

"The plaintiffs, having based their action among other facts on their capacity of heirs of Angel Oquendo, without such fact having been admitted by the defendants, they had the right to establish such capacity in this action without the necessity of having recourse therefor to the. act relating to special proceedings, although such proof can only be valid and efficient with relation to the defendants in the specific case under consideration, because for general purposes, or when it is sought to obtain a declaration of heirs, which has not been applied for in this action, the provisions of chapter three, of title one, of the act relating to special proceedings, which establish the mode and form of obtaining such declaration, would have to be observed."

And by way of supplement to the paragraph last above quoted we may add that unless some element of time and memory or other exceptional circumstance is involved, there would seem to be no sound reason why documentary evidence submitted to, inspected, and passed upon by opposing counsel before its admission, and oral testimony given at the trial upon the merits as between the adverse interests of contending parties, under keen judicial scrutiny sharpened by the struggle between contesting litigants, and subjected to the crucial test of cross examination, should not be regarded as having more intrinsic weight and real probative value and therefore as being even better evidence of the ultimate fact than the mere certified copy of a decree entered in an *ex parte* proceeding for designation of heirship wherein there is no equally alert opposition to the admis-

sion of documents and only the parties interested in establishing the fact and their witnesses are examined by their attorney and possibly by the court, but without any participation whatsoever by an adversely interested party. And recurring to the more fundamental question in *Velilla* v. *Pizá,* 17 P. R. R. 1069, a typical case of the proper application to the facts involved therein of the doctrine stated by the trial judge herein in his opinion, *supra,* the clear distinction between such a case and one like the present is carefully drawn by Mr. Justice Aldrey, who delivered the opinion of the court, as follows:

"It is true that articles 657 and 661 of the former Civil Code, which agree with sections 665 and 669 of the Revised Civil Code, provide that 'The rights to the succession of a person are transmitted from the moment of his death' and that 'Heirs succeed the deceased in all his rights and obligations by the mere fact of his death,' and in accordance with said sections the heir or heirs, if there are more than one, acquire altogether the rights of their predecessor.

"Heirship conveys a joint right to the aggregate heritage, and by virtue thereof, upon the death of their predecessor, all the heirs become owners in common. But until proceedings for partition and adjudication are terminated, and until by virtue thereof this community of ownership does not cease, no one of the heirs may be considered to be the sole and exclusive owner of any particular portion or fixed and specific aliquot part of the property of the heritage, which character it is necessary to prove before an action of ejectment may prosper.

"The aforesaid sections confer a right to each and all of the properties of the heritage, but not a specific right to certain properties, which can only be acquired by an adjudication lawfully made in partition proceedings.

    \*       \*       \*       \*       \*       \*       \*

"According to the foregoing, upon the death of the ancestor his heirs are the owners of the whole undetermined estate which is to be determined and specified by means of the partition and adjudication of the heritage, which partition and adjudication, according to section 1035 of the Revised Civil Code (1068 of the former), is what confers on each heir the exclusive ownership of the property which may have been adjudicated to him.

"It is true that in the judgment rendered by the Supreme Court of Spain on May 20, 1899, it was held that

" 'Taking as a basis the fact that at his death a person had full possession of certain real property by virtue of a conveyance duly recorded in the registry, it is unquestionable that from the moment of his death his children acquired the same by direct succession, and the designation of intestate heirship recorded in their favor in the registry constitutes dominion title sufficient to sustain an action of ejectment unless a better title should defeat it.'

"In that case, however, complete title to the property was recorded in favor of the ancestor; the action was brought by all the heirs; and they had recorded the property in their names by the presentation of a designation of heirship, none of which requisites have been complied with in the case at bar. In that case all of the heirs claimed in behalf of the community, and in this case one heir claims a moiety of an estate as his exclusive property.

"The doctrine which we set forth is supported by the decisions of the Supreme Court of Spain dated January 9, 1866; January 17, 1872; December 17, 1873; April 20, 1874; January 29, 1884."

The general rule applicable to the instant case is also clearly and correctly stated and further emphasized by Mr. Justice Wolf in his concurrent opinion in the Velilla case, as follows:

"My principal reason for filing a separate concurrent opinion is that it seems to me that the true rule has not been sufficiently emphasized in the opinion of the court, but stated rather by way of exception. I conceive the principle to be, ever since the days of Rome, that the heirs of a dead man succeed to all his rights and titles, and that they may bring a suit to recover all or any part of the property belonging to the decedent's estate which is held adversely to them. The exception is, when there is more than one heir, that no single heir can bring a suit to recover a particular piece or portion of property until he has been made the sole and exclusive owner of the same. All the heirs may bring such a suit, or one heir, in representation of all, might under certain restrictions successfully do so. It is almost an exemplification of the old motto 'United we stand, divided we fall.' I agree with the majority opinion entirely in so far as it takes as a basis for the affirmance of the judgment below the principle that where there are a number of heirs no single heir can bring a suit for a particular piece of property unless

there has been a partition and a division. But I do not agree with such parts of the opinion as seem to intimate that a title such as would enable all the heirs or the succession to bring a suit of reivindication is not complete at the instant of the death of the ancestor.

"In discussing the judgment of the Supreme Court of Spain of May 20, 1899, the majority opinion, if unexplained, or separated from its context, would seem to indicate that the record in the registry of property of the declaration of heirship might afford the heirs some greater rights. I do not understand the whole opinion so to decide, but such an inference might be drawn from the words the court used in distinguishing the case cited from the case at bar. Furthermore, the citation of the judgment of the Supreme Court of Spain of June 13, 1901, standing by itself, does not seem to me to state the law clearly. All the heirs may join to bring a suit for any individual piece of property which may be held adversely to them and of which they are the true owners."

The same general rule was applied in *Succession of Collado* v. *Pérez et al.,* 19 P. R. R. 881, to facts somewhat more analogous to those alleged in the case now before us. Although a large majority of such cases as have arisen in actual practice seems to illustrate the exception rather than the rule, yet there is no reason why any confusion should exist as to the fundamental principle involved and ordinarily there can be no difficulty in distinguishing cases upon the facts. We do not deem it necessary, therefore, to multiply instances nor to add anything to what we have heretofore said upon the same subject.

As we have already intimated, however, this was not the pivotal question of the court below and we have no reason to believe that a different result would follow a new trial upon the merits if ordered. The error therefore is harmless and the judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.